HHW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, an Arizona corporation, <br><br>Plaintiff, <br><br>v. <br><br>MICHAEL PANARESE, Individually and d/b/a R & M MOBILE, CHRIS PANARESE INNOVATIVE MODULAR SOLUTIONS, INC., an Illinois corporation, and DIMITRUS WOODSON as Special Administrator of the Estate of MARIO NAVARETTE WOODSON deceased, <br><br>Defendants. | No. 06 C 3250 <br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

The question before the Court is whether Michael Panarese's insurance policy provides coverage for a wrongful death lawsuit filed against him in state court. Here, the operative insurance policy contains two exclusions that preclude coverage. Accordingly, Nautilus's motion for summary judgment is GRANTED.

### I. Factual Background

The Flossmoor Public Library owns a tract of land located at 1000 Sterling Avenue in Flossmoor, Illinois. (Woodson 4th Am. Compl. Count 1 ¶ 1.) On April 28, 2003, the Library entered into a contract with Innovative Modular Solutions to deliver and install modular units on the Library's property. (Woodson 4th Am. Compl. Count 1 ¶ 3.)

1

Modular units are large trailer-like structures that can be used for a variety of purposes, including short-term office space or in this case, a temporary library. Innovative contracted with Michael Panarese d/b/a R & M Mobile to handle the installation and supervision of the modular units. (Woodson 4th Am. Compl. Count 1 ¶ 4.) Michael Panarese then hired Mario Navarette Woodson and Chris Panarese to provide labor and assistance with the project. (Woodson 4th Am. Compl. Count 1 ¶ 5; (Pl. 56.1(a)(3) St. Ex. A at ¶ 14.) Prior to beginning construction, Michael Panarese purchased liability insurance from the Nautilus Insurance Company. (Pl. 56.1(a)(3) St. ¶ 13.) The policy remained in effect during all relevant time periods.[1]

On April 28, 2003, Woodson was horribly injured at the construction site and died one day later. (Woodson 4th Am. Compl. Count 1 ¶ 11.) Subsequently, Woodson's estate brought a wrongful death lawsuit (the "Complaint") against the Panareses, Innovated and R & M Mobile.[2] The Complaint alleged the accident occurred in part because the Defendants improperly inspected the premises and equipment during construction. (Woodson 4th Am. Compl. Count 5 ¶ 13.) In response, Innovative filed a counterclaim (the "Counterclaim") against the Panareses. (Innovative's Counterclaim ¶¶ 18-21.) On June 14, 2006, Nautilus sought a declaratory judgment stating that Michael Panarese's insurance policy did not cover the allegations in Innovative's counterclaim or Woodson's wrongful death lawsuit. Therefore, Nautilus claimed it had no duty to defend

---

[1] The effective dates of the policy were from March 14, 2003, to March 14, 2004.
[2] The case was brought in the Circuit Court of Cook County, Illinois, and assigned case number 03 L 15628. The complaint also names Whitley Manufacturing, The Flossmoor Public Library and Mark Line Industries.

or indemnify the Panareses in either dispute. On April 24, 2007, Nautilus moved for summary judgment.[3]

*The Insurance Policy*

Nautilus issued a Commercial Lines Insurance Policy to Michael Panarese d/b/a R & M Mobile under policy number NC 235597. (Pl. 56.1(a)(3) St. ¶ 13.) The policy is subject to certain limitations however, and contains the following business classification exclusion: "This insurance does not apply to ... *operations which are not classified ...*" (Pl. 56.1(a)(3) St. ¶ 18.) (emphasis added) The classification on the insurance policy is: "carpentry construction of *residential property* not over 3 stories." (Pl. 56.1(a)(3) St. ¶ 17.) (emphasis added) The business description of the policy states: "*residential carpentry.*" (Pl. 56.1(a)(3) St. ¶ 15.) (emphasis added)

The policy contains an additional employee exclusion which bars coverage for "bodily injury" to an "employee." (Pl. 56.1(a)(3) St. ¶ 19.) An employee is defined as "persons hired by, loaned to, leased to, contracted for, or volunteering services to the insured ..." (*Id.*) At issue here is whether the two exclusions preclude coverage for liability stemming from Woodson's work-related death.

## II. Standard of Review

In Illinois, the interpretation of an insurance policy is a question of law that is appropriately resolved by summary judgment. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact

---

[3] Nautilus is a corporation organized under the laws of Arizona, while the Defendants are all citizens of Illinois. (Pl. 56.1(a)(3) St. ¶ 1.) Therefore, jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

3

and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### III. Analysis

To determine whether an insurance company has a duty to defend a policy holder, the Court must compare the allegations of the underlying complaint with the pertinent provisions of the insurance policy. *Roman Catholic Diocese v. Maryland Cas., Co. v.* 139 F.3d 561, 565 (7th Cir. 1998); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204, 1212, (Ill. 1992). If the allegations in the complaint fall within the scope of the policy, then the insurance company must defend the insured. *Roman Catholic Diocese*, 139 F.3d at 565. Here, the filings *sub judice* are Innovative's Counterclaim and the Complaint brought by Woodson's estate.

Woodson's estate alleges Woodson died from injuries he suffered while installing modular units at the Library. Specifically, the Complaint alleges: (a) Panarese failed to inspect the premises and equipment for unsafe conditions; (b) Panarese failed to provide proper instructions to Woodson; and (c) Panarese entrusted the supervision of the labor to an unqualified individual. (Woodson 4th Am. Compl. Count 5 ¶ 13.) Innovative's Counterclaim also arises from the accident at the Library. The Counterclaim alleges Panarese failed to carry adequate insurance and as a result Innovative was deemed Woodson's statutory employer. (Innovative Counterclaim ¶ 18-21). Consequently, Innovative seeks a right of indemnity against Panarese for all current and future sums it may owe to Woodson's estate. (Innovative Counterclaim ¶ 18-22).

*The Business Classification Exclusion*

As noted *supra*, Panarese's insurance policy does not extend to certain activities. In general, an insurer has the right to contract with the insured as to what risks the insurer will assume. *First Nat'l Bank of Chicago v. Fidelity Cas. Co. of N.Y*, 428 F.2d 499, 501 (7th Cir. 1970). Moreover, so long as the exceptions are not prohibited by statute or public policy, an insurer can include any number of exclusions in order to limit its liability and obligations to the insured. *See Santella v. Metro Life Ins. Co.*, 123 F.3d 456, 462 (7th Cir. 1997) ("in the absence of statutory regulation or of public policy to the contrary, the insurer may limit the circumstances and types of accident for which it will be liable by setting forth exclusion provisions"); 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d § 22:30, pp. 22-63 (3d ed. 2005) ("insurance companies have the same right as individuals to limit their liability"). Here, the insurance policy contains an exclusion that precludes coverage for carpentry projects not on the list of "classified" jobs. The policy lists the sole acceptable activity as "carpentry construction of *residential property* not over 3 stories." (Pl. 56.1(a)(3) St. ¶ 17.) (emphasis added). The business description on the policy states: *"residential carpentry."* (Pl. 56.1(a)(3) St. ¶ 15.) (emphasis added).

Nautilus contends Woodson was killed while he and Panarese were engaged in commercial carpentry. Because the policy only covers residential carpentry, Nautilus argues the business classification exclusion precludes coverage.[4] Innovative disagrees

---

[4] As a threshold matter the Court rejects Innovative's claim that Nautilus waived its right to assert that the business classification exclusion bars coverage. Waiver arises from an affirmative act and consists of "the intentional relinquishment of a known right." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E. 2d 1073, 1080 (Ill. 1993). One week after Woodson died, Nautilus sent Panarese a letter stating that although the employee exclusion applies, Nautilus "specifically reserve[s] the right to exercise any of the other terms, conditions or exclusions of this policy which now exist ..." (Def. 56.1(b)(3)(C) St. Ex. 3). Under Illinois law an insurer is not required to assert *all* of its defenses in a letter to the insured in order to avoid waiver. *Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465, 1470 (7th Cir. 1994) (no waiver exists where insurer sends letter to insured stating "there may be other reasons why

and argues the term "residential" is ambiguous and could potentially encompass the carpentry project at the Library. If a term in a policy is ambiguous then the policy will be construed against the drafter and in favor of the insured. *River*, 160 F.3d at 1169. But, where an exclusion is clear, definite and explicit, the Court must not look beyond the plain language of the contract and should enforce the policy as written. *First Nat'l Bank of Chicago*, 428 F.2d at 501 ("an insurance company has the right to limit coverage on a policy it issues and when it has done so, the plain language of the limitation must be effectuated."); *River*, 160 F.3d at 1169 ("an insurance policy that contains no ambiguity is construed according to the plain and ordinary meaning of its terms").

Innovative argues the word "residential" is subject to multiple interpretations but failed to identify any court in Illinois that has parsed its meaning. Perhaps, this is because the word "residential" is neither arcane nor unusual nor difficult to understand. First, the Court notes that "residential" can be defined as "of, relating to, or connected with residence or residences." American Heritage Dictionary 1483 (4th ed. 2000). According to the American Heritage Dictionary, a residence is defined as "the place in which one lives; a dwelling." 1483 (4th ed. 2000). The Oxford English Dictionary defines residence as "one's usual dwelling place or abode." 707 (2d. ed. 1989). Finally, Webster's Third New International Dictionary states that a residence is "the place where one actually lives ..." 1931 (3rd ed. 1981). None of these definitions support the assertion that the installation of modular units *at a library* can be considered *residential* carpentry, i.e. carpentry related to the place where one "actually lives."

---

coverage does not apply"). Here, the Court finds that Nautilus did not intentionally relinquish its right to assert non-coverage via the business classification exclusion.

6

Undeterred by the language of the policy, Innovative asserts "modular units can be used for a variety of purposes ranging from storage units ... to homes, classrooms, bathrooms, or as in this case, a temporary library." According to Innovative, because the units could theoretically be used as homes, Panarese's work could be considered "residential" in nature. (Innovative Resp. Br. at 8.) Innovative's linguistic sophistry is not persuasive. For example, suppose a motorist was issued a ticket for driving without insurance. It would be absurd to argue that because some people sleep in their cars, homeowner's insurance is an adequate substitute for automobile insurance. Likewise, it is immaterial that the modular units could theoretically be used as homes. The units were being installed on commercial property in order to house a temporary library – this is not residential carpentry.

To ensure that written contracts are appropriately enforced, "a court should not search for ambiguity where none exists." River 160 F.3d at 1169. The "words or language used in an insurance policy are to be given their plain, literal meaning in their ordinary sense." *Clorox Co. v. KPK Corp. No.* No. 82-C7481, 1984 U.S. Dist. LEXIS 22417, at *12, 1984 WL 1257 (N.D. Ill. Oct 16, 1984). Using the perspicuous meaning of the word "residential" the Court has determined the policy does not extended to work done for commercial purposes on commercial properties. Accordingly, the business classification exclusion precludes coverage for the underlying Complaint and Counterclaim. *See Chmiel v. JC Penny Life Ins. Co.* 158 F.3d 966, 969 (7th Cir. 1998) (enforcing the plain language of an insurance exclusion that precluded coverage if the insured had a blood-alcohol level of .10% or higher during an accident).

*The Employee Exclusion*

Panarese's policy also contains an exclusion which precludes coverage for bodily injury to employees. (Pl. 56.1(a)(3) St. ¶ 19.) An employee is defined as "persons hired by, loaned to, leased to, contracted for, or volunteering services to the insured ..." (*Id.*) Nautilus contends the employee exclusion bars coverage because Woodson was Panarese's employee at the time of his death. Innovative argues that while the Complaint alleges Woodson was an employee, the Complaint is silent with respect to *who* actually hired him. In other words, because the lawsuit does not state that Woodson was hired by Panarese, coverage may be appropriate because the exclusion only applies to injuries suffered by *employees of the insured*. (Resp. Br. at 10.)

Innovative's argument is unconvincing because Panarese has admitted that he employed Woodson. Panarese's answer to one of the Plaintiff's interrogatories is especially illuminating:

> Q: Please state the name, occupation, employer and current address of the individual or individuals who participated in the work involving the placement of the modular units onto the bottle jacks and rolling track system involved in the occurrence.
>
> A: *Decedent, Mario Woodson, employed by Michael Panarese* doing business as R & M mobile ...

(Pl. 56.1(a)(3) St. Ex. A at ¶ 14.) (emphasis added)

Given this admission, there is no dispute that Woodson was Panarese's employee. Likewise, there can be no dispute that the employee exclusion precludes coverage for the underlying Complaint and Counterclaim.

*There is No Duty to Indemnify*

The Court has determined that Nautilus has no duty to defend Panarese against either of the lawsuits in question. Therefore, Nautilus is under no obligation to indemnify

8

Panarese. As the Seventh Circuit stated: where "no duty to defend exists, it is appropriate to also conclude that no duty to indemnify exists." *Employers Reinsurance Corp. v. Wilkens-Lowe & Co. Inc.*, Nos. 93-2219 and 93-2273, 1994 U.S. App. LEXIS 4825, at *12 (7th Cir. Mar. 14, 1994); *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992) ("the duty to defend is broader than the duty to indemnify--where there is no duty to defend there cannot arise a duty to indemnify"); *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E. 2d 1073, 1081 (Ill. 1993) ("clearly where there is no duty to defend, there will be no duty to indemnify ...").

## CONCLUSION

For the reasons stated above, the Court enters summary judgment in favor of Nautilus and against Defendants, Innovative and Dimitrius Woodson, as Special Administrator of the Estate of Mario Navarette Woodson. The Court finds that the exclusions in the insurance policy preclude coverage for Woodson's wrongful death lawsuit and Innovative's Counterclaim. As a result, Nautilus has no duty to defend or indemnify Michael Panarese, Chris Panarese or R & M Mobile.

IT IS SO ORDERED.

2/22/08
Dated

The Honorable William J. Hibbler
United States District Court